UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERCHON R. JONES,

    Plaintiff,                                 Civil Action No. 12-13673

v.                                        HON.  LAWRENCE P. ZATKOFF
                                           U.S. District Judge
                                           HON. R.  STEVEN WHALEN
COMMISSIONER OF SOCIAL        U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Verchon R. Jones brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on September 2, 2008, alleging disability as of June 16, 1997 (Tr. 162-168).  After the initial denial of the claim, Plaintiff requested an administrative hearing,

held on January 19, 2011 in Livonia, Michigan (Tr. 39). Administrative Law Judge ("ALJ") Dennis Matulewicz presided (Tr. 39). Plaintiff, represented by attorney Stu Johnson, testified (Tr. 47-62), as did Vocational Expert ("VE") John Stokes (Tr. 62-67). On January 31, 2011, ALJ Matulewicz found that Plaintiff could perform a significant range of light work (Tr. 19, 25). On June 27, 2012, the Appeals Council denied review (Tr.1-3). Plaintiff filed for judicial review of the final decision on August 20, 2012.

## BACKGROUND FACTS

Plaintiff, born May 9, 1976, was age 34 when the ALJ issued his decision (Tr. 25, 162). His application for benefits states that he completed 10th grade in 1993 and worked briefly as a janitor (Tr. , 191,194). He alleges disability as a result of a learning disability and hip and lower extremity pain (Tr. 190).

### A.     Plaintiff's Testimony

Plaintiff offered the following testimony:

Plaintiff had four children by four different woman, ranging in ages from 17 to one month (Tr. 47-48). He relied on support from his grandfather and food stamps to survive (Tr. 38). In 1995, he spent five months in a county jail for selling drugs and in 1996, served a seven-month sentence in another county jail on a separate drug conviction (Tr. 49). He was sent to prison in 2007 after being convicted of an armed assault (Tr. 49). He was released after serving 28 months of a five-year sentence (Tr. 50). He denied the use of illicit drugs since 2007 (Tr. 50). He did not have a driver's license (Tr. 51). He experienced problems reading, writing, and making change (Tr. 50). He worked 40 hours a week as a dishwasher

while in prison (Tr. 52).  He sought treatment for hip pain while in prison but denied psychiatric treatment (Tr. 52).  He denied lifting weights, but acknowledged that he played basketball and "[caught] footballs" (Tr. 54).

Plaintiff alleged that shoulder, back, and hip pain prevented him from working (Tr. 54).  He denied any shoulder, back, or hip treatment since sustaining injuries in a 1997 car accident (Tr. 55).  He denied the current use of alcohol, illicit drugs, and tobacco, but acknowledged that he was convicted of driving under the influence of alcohol in 1996 (Tr. 56).

In response to questioning by the ALJ, Plaintiff reported that he did not experience problems lifting a gallon of milk, sitting for 30 minutes, or walking for 15 (Tr. 57).  He divided his time between the homes of female friends (Tr. 58).  He experienced problems concentrating (Tr. 59).

In response to additional questioning by his attorney, Plaintiff alleged problems reading a newspaper, noting that he had filled out his application for benefits with the help of a prison counselor (Tr. 59).  He was placed in special education classes while in school and was uncertain as to whether he dropped out after ninth or tenth grade (Tr. 61-62).

### B. Medical Evidence

#### 1. Treatment-Related Sources

Plaintiff's ninth grade school records show that he received average grades in special

education academic subjects but received failing grades in art, world history, and physical education (Tr. 316). An April, 2007 physical examination by a physician employed by the Iowa Department of Corrections showed a full range of motion and 5/5 strength in the upper and lower extremities (Tr. 252-253). Plaintiff was cooperative and denied health concerns (Tr. 252-254). The same month, educational testing placed Plaintiff's "total battery" of language and mathematic skills in the 11th percentile nationally (Tr. 266). In August, 2007, Plaintiff reported temporary lightheadedness after hitting the back of his head (Tr. 258). In March, 2008, he reported chest pain "for 24 hours after doing 200 pushups . . ." (Tr. 260). In October, 2008, Durga V. Satyavolu, M.D. found that Plaintiff did not require work or sports restrictions (Tr. 274). He exhibited a full range of motion (Tr. 287). In August, 2009, Plaintiff sought emergency treatment for hip pain (Tr. 341). He was given Toradol before being discharged (Tr. 341). Examining records state that Plaintiff did not exhibit psychological problems (Tr. 346). Plaintiff reported that he took a daily multivitamin (Tr. 348). May, 2010 treating records by Southfield Family Physicians note Plaintiff's report of continuing hip pain (Tr. 356). An x-ray of the right hip taken the following month showed no abnormalities (Tr. 353).

### 2. Non-treating Sources

In February, 2009, David R. Bucur, Ph.D. administered a Mental Status Examination and a Wechsler Adult Intelligence Scale-Third Edition ("WAIS-III") (Tr. 296-303). Plaintiff reported that he had been placed in special education throughout school (Tr. 297). He

reported that he had worked at a car wash and as a landscaper in the past (Tr. 297). He denied a history a psychological problems but admitted that he had been incarcerated multiple times for drug-related offenses (Tr. 297). He reported difficulty walking due to injuries sustained in a 1997 car accident (Tr. 297). He was able to perform simple additions but was unable to multiply or divide (Tr. 298). He appeared fully oriented with an "upbeat affect" (Tr. 299). Dr. Bucur noted that Plaintiff's speech was "coherent but . . . slower than normal . . ." (Tr. 300). Plaintiff reported that he currently drank to the point of intoxication "approximately once per week," adding that he generally drank cognac (Tr. 300). He was independent in self care and reported that he "enjoyed going to the gym while in prison" (Tr. 300). He received IQ scores of 58, full scale; verbal, 61; and performance, 62 (Tr. 301). Dr. Bucur diagnosed Plaintiff with alcohol dependence and mild mental retardation (Tr. 302). He assigned him a GAF of 55, noting that low arithmetic scores prevented Plaintiff from handling his own funds[1] (Tr. 302).

    The same month, Kanayo K. Odeluga, M.D. performed a physical consultative examination of Plaintiff on behalf of the SSA (Tr. 305-310). Plaintiff reported constant low back pain as a result of a 1997 car accident (Tr. 305). Plaintiff reported feelings of depression as a result of back problems, but denied psychological treatment (Tr. 306). The physical examination was wholly unremarkable (Tr. 306-309).

---

[1] A GAF score of 51-60 indicates moderate symptoms (occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders--Text Revision* (*DSM-IV-TR*), 34(4th ed.2000).

An April, 2009 non-examining Psychiatric Review Technique states that Plaintiff experienced organic and substance addiction disorders (Tr. 318-319, 326).  Under the "'B' Criteria," Maura Clark, Ph.D. found moderate difficulties in social functioning and maintaining concentration, persistence, or pace (Tr. 328).  Dr. Clark also completed a Mental Residual Functional Capacity Assessment, finding that Plaintiff was moderately limited in the ability to understand, remember, or carry out detailed instructions; sustain an ordinary routine without supervision; work without psychological interruptions; and interact appropriately with the general public (Tr. 332-333).  Dr. Clark found "no evidence of [mental] retardation before age 22" (Tr. 334).  She noted that Plaintiff worked previously as a janitor, car wash worker, and landscaper (Tr. 334).  She also noted that Plaintiff's activities included personal care, household chores, walks, shopping, and managing his own money (Tr. 334).

### D. The Vocational Expert

VE John Stokes found that Plaintiff's work activity as a janitor did not constitute "past relevant work" for the purposes of the disability analysis (Tr. 64).  The ALJ then posed the following hypothetical question to the VE, taking into account Plaintiff's age and education:

> [A]ssume an individual, who could lift 20 pounds maximum, 10 pounds frequently, 20 pounds occasionally, sit six hours of an eight-hour work shift, stand and or walk six hours in an eight hour work shift, who should never use ladders, scaffolds, or ropes, and only occasionally use ramps or stairs, stoop, kneel, crouch, crawl, or balance, occasionally bend, twist, turn at the waist or neck. Who could only perform simple unskilled work, with an SVP [Specific Vocational Preparation] rating of 1 or 2, work that would not involve

computing, calculating, problem solving, or reasoning. Work with minimal personal interaction, contact, or discussion with coworkers and work requiring brief and superficial contact with the general public. Routine work that would never require changes or adaptations in order to do these more than once a month . . . ? (Tr. 64).

The VE found that the above described individual could perform the unskilled, exertionally light[2] work of a small product assembler (3,500 jobs in existence in the regional economy); packager (4,800); and laundry worker (7,900) (Tr. 65). The VE stated that his testimony was not inconsistent with the information found in the Dictionary of Occupational Titles ("DOT") (Tr. 65). The VE testified that if Plaintiff's allegations of limitations were fully credited, he would be unable to perform the above stated jobs but could work as a machine feeder (14,000) (Tr. 66).

### E. The ALJ's Decision

Citing Plaintiff's medical records, ALJ Matulewicz found that Plaintiff experienced the severe impairments of "back and hip disorders, history of alcohol abuse, alcohol dependence, and mild mental retardation" but that none of the conditions met or medically equaled one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4 (Tr. 17). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light

---

[2]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

work with the following limitations:

> [H]e can never use ladders, scaffolds, or ropes; occasionally use ramps, stairs, stoop, kneel, crouch, crawl or balance; occasionally bend, twist and turn at the waist or neck; requires simple, unskilled work with a SVP rating of 1 or 2; no jobs that require computing, calculating, problem solving, or reasoning; requires work with minimal personal interaction, contact or discussion with coworkers; work requiring brief and superficial contact with the general public; and routine work that does not require[] changes or adaptations in work settings or duties more than once per month (Tr. 19).

Citing the VE's job numbers (see above) the ALJ found that Plaintiff could work as an assembler, packager, or laundry worker (Tr. 24).

The ALJ found that Plaintiff was "not generally credible," noting Plaintiff's claims that he was unable to lift weights stood at odds with prison records stating that he experienced chest pain after doing 200 sit-ups (Tr. 22-23).[3] In support of the denial of benefits, the ALJ observed that Plaintiff was able to work 40 hours each week as a dishwasher while incarcerated (Tr. 23). The ALJ cited Dr. Bucur's finding that Plaintiff had a full-scale IQ of 58 but had no other abnormality other than speaking slowly (Tr. 22). The ALJ also cited Plaintiff's admission to Dr. Bucur that he consumed alcohol "to intoxication once per week" (Tr. 23).

## STANDARD OF REVIEW

---

[3] The records state that Plaintiff was doing push-ups, not sit ups (Tr. 260). The ALJ's misstatement, however, would not change his conclusion that Plaintiff's testimony as to his limited ability to lift weights was contradicted by his having worked out in a gym while in prison.

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence,

whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. The Step Three Determination

Plaintiff argues that the finding that he did not meet the listing for mental retardation at Step Three constitutes error. *Plaintiff's Brief* at 8-13. Plaintiff acknowledges that he has not presented IQ testing performed prior to his 22nd birthday, but that his academic records, (showing multiple failed courses) support the inference that he experienced mental retardation before reaching adulthood. *Id.* He contends that his poor academic showing, coupled with the February, 2009 full scale IQ score of 58, entitled him to a disability finding at Step Three. *Id.*; 20 CFR Pt. 404, Subpt. P, App. 1, § 12.05.

Plaintiff bases this argument on one of the four possible criteria for disability as a result of mental retardation under Listing 12.05, which requires (1) "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested

during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22," *and* (2) (B) "a showing of "[a] valid verbal, performance, or full scale IQ of 59 or less. " 20 CFR Pt. 404, Subpt. P, App. 1, § 12.05.

Substantial evidence supports the ALJ's finding that Plaintiff was not disabled under Listing 12.05(B). First, the ALJ did not base his Step Three findings merely on the absence of IQ testing prior to Plaintiff's 22nd birthday. He observed that earlier records did not include "test results," or an "individual education plan" reflecting a diagnosis of mental retardation (Tr. 22).

Second, the ALJ noted that the transcript as a whole undermined the position that Plaintiff was disabled as a result of mental retardation. To be sure, Plaintiff is correct that a claimant need not present IQ scores predating his 22nd birthday to establish mental retardation but rather, "evidence [that] demonstrates or supports onset of the impairment before age 22." § 12.05. Plaintiff argues that the February, 2009 full scale score of 58 and substandard academic performance constitutes such evidence. However, as noted by the ALJ, substantial evidence also supports the opposite conclusion. The ALJ acknowledged the February, 2009 full scale IQ of 58, but permissibly concluded that Plaintiff's wide variety of activities ("chores, going out alone, managing money, watching children, caring for his own personal needs") "outstrip[ped] the IQ score of 58" (Tr. 22).

My own review of the transcript reveals additional evidence supporting the conclusion that Plaintiff's mild mental retardation did not prevent him from performing a significant range of work. Plaintiff's admission that he was able to work 40 hours a week as a

-11-

dishwasher while in prison undermines his claims of disability. Likewise, he reported to Dr. Bucur that he had worked in a car wash and as a landscaper in the past (Tr. 297). Plaintiff's contention that IQ scores achieved at the age of 32 is entitled to controlling weight in determining his mental status before the age of 22 is undermined by his professed ability to work at a variety of jobs after leaving school. The fact that the full scale score of 58 was just two points within the range required to establish disability under § 12.05(B) further weakens Plaintiff's position that the evidence supports the presence of mental retardation before the age of 22.

### B. The Vocational Testimony

Plaintiff also argues that the hypothetical question posed to the VE did not account for his full degree of limitation. *Plaintiff's Brief* at 13-15. He contends that the hypothetical question ought to have included mention of his placement in special education, reading deficiencies, and problems handling stress. *Id.* at 14. He contends further that the hypothetical question did not include reference to his moderate deficiencies in concentration, persistence, or pace ("CPP") as acknowledged in the administrative decision. *Id.* at 14-15 (citing Tr. 19).

Plaintiff is correct that a VE's job findings given in response to a hypothetical question constitute substantial evidence only if the question accounts for the claimant's full degree of work-related impairment. *Varley v. Secretary of HHS,* 820 F. 2d 777, 779 (6th Cir. 1987). However, while "[t]he hypothetical question ... should include an accurate portrayal of [a

claimant's] individual physical and mental impairments," it need not list all of a claimant's maladies verbatim. *Webb v. Commissioner of Social Sec.*, 368 F.3d 629, 632 (6th Cir.2004)(citing *Varley,* 820 F.2d at 779 (6th Cir. 1987)); *see also Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001).

Nonetheless, Plaintiff's argument that the hypothetical question ought to have included mention of his IQ score, placement in special education classes, and his first to third grade reading level is unavailing. Plaintiff relies on *Webb, supra,* for the proposition that the hypothetical question must "reference all of a claimant's limitations." *Plaintiff's Brief* at 13; *Webb,* 368 F.3d at 633. However, *Webb* specifically rejects the position that "hypothetical questions to vocational experts are required to include lists of claimants' medical conditions" *Id.* (citing 20 C.F.R. § 416.920(a)(4)(v))("vocational expert is not expected to evaluate the claimant's medical conditions" in determining "what he "'can and cannot do.'").

Further, the ALJ's choice of hypothetical limitations adequately addressed Plaintiff's credible limitations by limiting him to unskilled, routine work, including SVP 1 and 2 jobs (Tr. 64). The ALJ also accounted for Plaintiff's cognitive deficiencies by precluding work involving "computing, calculating, problem solving, or reasoning" (Tr. 64). Plaintiff's argument that the hypothetical question did not specify his educational level is undermined by his own testimony (in the presence of the VE) that he attending special education classes and dropped out of school in ninth or tenth grade (Tr. 61-62). He provides no basis for the conclusion that the VE did not take his educational background into account when providing the job testimony. The restriction to work involving "minimal person interaction . . . contact

. . . or discussion with coworkers" and "brief and superficial contact with the general public" adequately addressed Plaintiff's professed limitations as a result of stress.

Plaintiff's additional contention that the hypothetical question did not address his moderate deficiencies in concentration, persistence, and pace ("CPP") does not provide grounds for remand. First, as discussed above, he is incorrect that the ALJ is required to include verbatim the phrase "moderate deficiencies in concentration, persistence, or pace" or other talismanic language in the hypothetical question. *See Smith, supra,* 307 F.3d at 379; *Webb,* 368 F.3d at 633.

Second, his reliance on a line of cases holding that the hypothetical modifiers of "simple," "routine," and "unskilled," (even when used in conjunction) may be insufficient to account for moderate deficiencies in CPP is inapplicable to the facts of this case. *Plaintiff's Brief* at 13-15 (*citing Ealy v. Commissioner,* 594 F.3d 504 (6th Cir. 2010)); *see also Edwards v. Barnhart,* 383 F. Supp. 2d 920, 930-931 (E.D. Mich. 2005)(Friedman, J.). None of the cases cited state that these modifiers are *always* insufficient. A number of courts in this district have found the terms simple, routine, and unskilled, without more, are sufficient to account for the claimant's moderate concentrational limitations. *See Lewicki v. Commissioner of Social Security*, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010)(the modifiers of "simple routine work" adequately account for moderate deficiencies in CPP); *Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich. August 30, 2011)("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain

hypothetical limitations)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, *7 (E.D.Mich. June 16, 2008))(same).

Moreover, the ALJ did not limit the hypothetical limitations to simple, routine and unskilled, but rather, precluded the need for "computing, calculating, problem solving, [or] reasoning" (Tr. 64). Further, in making the job findings, the VE was aware of Plaintiff's failure to complete high school and placement in special education as a result of Plaintiff's testimony. While Plaintiff contends that the omission of reference to his limitations in reading ought to have been included in the hypothetical question, he fails to state how the jobs of assembler, packer, or laundry worker, would require more than rudimentary reading skills. To the extent that Plaintiff would argue that he would be unable to meet the pacing requirements of any of these positions, I note once again that he was able to work 40 hours a week as a dishwasher during his latest incarceration. The record as a whole does not support the need for more stringent hypothetical limitations.

The ALJ's determination that the Plaintiff was capable of a significant range of unskilled, light work is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and should not be disturbed by this Court. *Mullen v. Bowen*, *supra*.

## CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment be GRANTED and that Plaintiff's Motion for Summary Judgment be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of

service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: September 24, 2013                s/R. Steven Whalen
                                         R. STEVEN WHALEN
                                         UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on September 24, 2013, electronically and/or by U.S. Mail.

                                         s/Michael Williams
                                         Case Manager to the
                                         Honorable R. Steven Whalen